IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

TORRIE A. WILLIAMSON,                    *

     Plaintiff,                         *

vs.                                      *

WALMART STORES, INC.; WALMART     *
STORES EAST, L.P.; KINDERHOOK          CASE NO. 3:14-CV-97 (CDL)
INDUSTRIES II, L.P.; KINDERHOOK  *
INDUSTRIES, LLC; KINDERHOOK
CAPITAL FUND II, L.P.; and HOME  *
DEPOT USA, INC.

                                  *

     Defendants.

                                  *

## O R D E R

Plaintiff Torrie A. Williamson was seriously injured when a plastic gas container she was using near a fire exploded. Williamson asserts various product liability claims against Defendants Walmart Stores, Inc. and Walmart Stores East, L.P. (collectively, "Wal-Mart"); Defendants Kinderhook Industries II, L.P., Kinderhook Industries, LLC, and Kinderhook Capital Fund II, L.P. (collectively, "Kinderhook Defendants"); and Defendant Home Depot USA, Inc. Presently pending before the Court are Defendants' motions to dismiss the First Amended Complaint. For the reasons set forth below, all three motions (ECF Nos. 36, 37, & 38) are granted in part and denied in part.

MOTION TO DISMISS STANDARD

"To survive a motion to dismiss" under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The complaint must include sufficient factual allegations "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In other words, the factual allegations must "raise a reasonable expectation that discovery will reveal evidence of" the plaintiff's claims. *Id.* at 556. "Rule 12(b)(6) does not permit dismissal of a well-pleaded complaint simply because 'it strikes a savvy judge that actual proof of those facts is improbable.'" *Watts v. Fla. Int'l Univ.,* 495 F.3d 1289, 1295 (11th Cir. 2007) (quoting *Twombly,* 550 U.S. at 556).

Williamson contends that the Court should not consider several arguments presented in Defendants' current motions to dismiss. After Defendants filed motions to dismiss Williamson's original Complaint, Williamson filed a First Amended Complaint, and the Court found the motions to dismiss the original Complaint moot in light of the amendment. Citing Federal Rule of Civil Procedure 12(g)(2), Williamson argues that the Court should not consider any defense that Defendants did not make in

their motions to dismiss her original Complaint if those defenses could have been raised at that time. Under Rule 12(g)(2), a party that makes a motion under Rule 12 "must not make another motion . . . raising a defense or objection that was available to the party but omitted from its earlier motion" unless another motion is permitted under Rule 12(h)(2) or (3). Fed. R. Civ. P. 12(g)(2). Although Rule 12(h)(1) provides that certain defenses are waived if they are not raised in an initial answer or motion to dismiss, Rule 12(h)(2) permits a motion to dismiss for failure to state a claim upon which relief may be granted to be raised "by a motion under Rule 12(c) . . . or at trial." Fed. R. Civ. P. 12(h)(2)(B)-(C). The only "new" defenses here are additional arguments that Williamson's First Amended Complaint fails to state a claim. Instead of requiring the parties to litigate a Rule 12(c) motion after the pleadings are closed, the Court will decide the issues now; there is no reason to delay the inevitable on Williamson's claims that must be dismissed for failure to state a claim.

FACTUAL ALLEGATIONS

Williamson alleges the following facts in support of her claims. The Court must accept these allegations as true for purposes of the pending motions to dismiss.

On December 2, 2012, Williamson was using a plastic gas container near a fire when the gas container exploded and caused

her serious injuries.  The container was manufactured by Blitz USA, Inc., a corporation indirectly owned by Kinderhook Capital Fund II, L.P. that is now defunct and bankrupt.  Williamson alleges that Wal-Mart and the Kinderhook Defendants controlled the design of the container.  Williamson believes that the container was purchased at a Georgia Wal-Mart, Home Depot, or Ace Hardware.  1st Am. Compl. ¶ 17, ECF No. 32.  She alleges that Wal-Mart "likely" sold the container that caused her injuries.  *Id.* ¶ 26; *accord id.* ¶ 46.  She also alleges that the Kinderhook Defendants, "Wal-Mart, Home Depot and/or [Ace Hardware] distributed or sold the Blitz gas container at issue or sold the market share of such containers in the state of Georgia."  *Id.*  ¶¶ 89, 153, 161.  "In the alternative," Williamson alleges that "the gas container at issue in this lawsuit was purchased at Home Depot." *Id.* ¶¶ 154, 161.  Based on these allegations, Plaintiff asserts the following claims:

1. Design defect and failure to warn claims against Wal-Mart (Counts 1 and 2) and the Kinderhook Defendants (Counts 3, 4, and 6) as manufacturers under strict liability and negligence theories.

2. Failure to retrofit/recall claims against all Defendants (Counts 2, 4, and 8).

3. Claim against all Defendants under the Consumer Product Safety Act, 15 U.S.C. § 2051 *et seq.* (Count 5)

4. Failure to warn claims against Wal-Mart and Home Depot as product sellers (Count 7).

DISCUSSION

## I.   Manufacturer Liability Claims against Wal-Mart

Williamson asserts design defect and failure to warn claims against Wal-Mart under strict liability and negligence theories based on Wal-Mart's alleged role as a designer of the gas container.  1st Am. Compl. ¶¶ 44-85.  Wal-Mart does not argue that Williamson's First Amended Complaint completely fails to state a claim against Wal-Mart under these theories.  Rather, Wal-Mart objects to three paragraphs in the First Amended Complaint, arguing that Williamson is trying to assert claims in addition to her design defect and failure to warn claims and that Williamson did not plead these claims with sufficient particularity.  At the hearing on the motion to dismiss, Williamson conceded that she is not asserting any manufacturer liability claims against Wal-Mart other than her design defect and failure to warn claims.  To the extent her First Amended Complaint could be construed to assert other claims, those claims are dismissed.

## II.  Manufacturer Liability Claims against the Kinderhook Defendants

Williamson asserts design defect and failure to warn claims against the Kinderhook Defendants under strict liability and negligence theories based on their alleged role as designers of the gas container.  The Kinderhook Defendants contend that they

are not subject to personal jurisdiction in Georgia because they are Delaware entities with a primary place of business in New York.  Williamson argues that they are subject to personal jurisdiction because the Kinderhook Defendants controlled the design of the gas container, which was sold in Georgia, and because Kinderhook Defendants owned and controlled Blitz USA, which manufactured the gas container.[1]

For the Court to exercise personal jurisdiction over the Kinderhook Defendants, jurisdiction must be appropriate under Georgia's long-arm statute and under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1257-58 (11th Cir. 2010).  Georgia courts may exercise personal jurisdiction over nonresident defendants who, "in person or through an agent" transact "any business within" Georgia or who commit "a tortious injury in [Georgia] caused by an act or omission outside [Georgia]," but only if the defendant "regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue

---

[1] The Kinderhook Defendants do not dispute that in 2007, Kinderhook Capital Fund II, L.P. acquired a 75.2% interest in a limited liability company that indirectly owned Blitz USA through a series of wholly-owned subsidiaries.  The Kinderhook Defendants also do not dispute that Kinderhook Industries, LLC manages Kinderhook Industries II, L.P., which in turn manages Kinderhook Capital Fund II, L.P. Plaintiff contends that after the acquisition of Blitz USA, the Kinderhook Defendants embarked on a mission to drain Blitz USA's assets and shield it from liability for its defective products.  1st Am. Compl. ¶¶ 32-34, 37-39

from goods used or consumed or services rendered" in Georgia. O.C.G.A. § 9-10-91(1), (3).  And under the Due Process Clause, Georgia courts may exercise personal jurisdiction over defendants "who have established certain minimum contacts with [Georgia] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Diamond Crystal*, 593 F.3d at 1267 (internal quotation marks omitted).

The Kinderhook Defendants do not appear to dispute that Blitz USA, which manufactured the gas container at issue in this case, transacted business in Georgia and had sufficient contacts with Georgia to make personal jurisdiction over Blitz USA appropriate.  The question for the Court is whether Williamson alleged enough to show that personal jurisdiction over the Kinderhook Defendants is appropriate based on their own alleged conduct or their alleged relationships with Blitz USA.

Williamson alleges that the Kinderhook Defendants, knowing that the gas containers would be sold in Georgia, "actually became the designers of Blitz's gas cans, having the power to control and actually using that power to make design changes, schedule changes, require reports regarding design changes, review design prototypes and actually determine when a newly designed product was ready for sale."  1st Am. Compl. ¶ 25. Williamson also alleges that the Kinderhook Defendants "wholly

controlled" the activities of Blitz USA and that "Kinderhook
made the decision . . . to omit a flame arrestor from the design
of Blitz gas cans of the type which severely injured
[Williamson]." *Id.* ¶ 41 ("Blitz was a fake company controlled
by Kinderhook."). The Kinderhook Defendants submitted a
declaration to dispute these allegations, and the Court
recognizes that a plaintiff generally must produce evidence
supporting jurisdiction if "the defendant challenges
jurisdiction by submitting affidavit evidence in support of its
position" that personal jurisdiction is inappropriate. *Diamond
Crystal*, 593 F.3d at 1257 (internal quotation marks omitted).
But no jurisdictional discovery has taken place in this case,
and the Court declines to dismiss Williamson's claims against
the Kinderhook Defendants based solely on the affidavit. So the
question for the Court at this stage boils down to whether
Williamson's First Amended Complaint alleges enough for the
Court to find that discovery is warranted on her claim that the
Kinderhook Defendants actually designed the gas container and
her claim that Blitz USA served as the mere alter ego of the
Kinderhook Defendants.

A.  Claims Based on Kinderhook Defendants' Alleged Conduct

Under Georgia law, product manufacturers may be liable to
consumers who are injured "because the property when sold by the
manufacturer was not merchantable and reasonably suited to the

8

use intended, and its condition when sold is the proximate cause of the injury sustained." O.C.G.A. § 51-1-11(b)(1). The Kinderhook Defendants contend that Williamson did not allege enough facts to show that they should be considered "manufacturers" under Georgia law. But Williamson asserts that the Kinderhook Defendants designed the gas container and made the critical decision to omit a flame arrestor. As acknowledged in a case cited by the Kinderhook Defendants, "an actual manufacturer *or designer* of [a] product" is "deemed a manufacturer for the purposes of strict liability" under Georgia law. *Morgan v. Mar-Bel, Inc.*, 614 F. Supp. 438, 440 (N.D. Ga. 1985) (emphasis added); *accord, e.g., Davenport v. Cummins Ala., Inc.*, 284 Ga. App. 666, 671, 644 S.E.2d 503, 507 (2007) ("[S]trict liability applies only to those actively involved in the design, specifications, or formulation of a defective final product[.]"); *Buchan v. Lawrence Metal Prods., Inc.*, 270 Ga. App. 517, 521, 607 S.E.2d 153, 156-57 (2004) (finding a jury question on whether a product seller had an active role in the design of a product and could therefore be held liable as a manufacturer). For these reasons, Williamson sufficiently alleged that the Kinderhook Defendants were "manufacturers" of the gas container within the meaning of Georgia law. The Court thus finds that Williamson is entitled to jurisdictional

discovery on her direct claims against the Kinderhook Defendants.

B.  Alter Ego Claims Against Kinderhook Defendants

In general, a parent corporation is not liable for the acts or omissions of its subsidiary unless the corporate veil is pierced, the subsidiary is the mere alter ego of the parent, there is an agency relationship between the parent and subsidiary, or there is a joint venture between the parent and subsidiary. *Kissun v. Humana, Inc.*, 267 Ga. 419, 419, 479 S.E.2d 751, 752 (1997). Here, Williamson contends that the alter ego doctrine applies. "Under the alter ego doctrine in Georgia, the corporate entity may be disregarded for liability purposes when it is shown that the corporate form has been abused." *Baillie Lumber Co. v. Thompson*, 279 Ga. 288, 289, 612 S.E.2d 296, 299 (2005); *see also Christopher v. Sinyard*, 313 Ga. App. 866, 867, 723 S.E.2d 78, 80 (2012) ("The concept of piercing the corporate veil is applied in Georgia to remedy injustices which arise where a party has overextended his privilege in the use of a corporate entity in order to defeat justice, perpetrate fraud or to evade contractual or tort responsibility.").

The Kinderhook Defendants do not dispute that in 2007, Kinderhook Capital Fund II, L.P. acquired a 75.2% interest in a limited liability company that indirectly owned Blitz USA

10

through a series of wholly-owned subsidiaries. The Kinderhook Defendants also do not dispute that Kinderhook Industries, LLC manages Kinderhook Industries II, L.P., which in turn manages Kinderhook Capital Fund II, L.P. Williamson alleges:

1) The Kinderhook Defendants restructured Blitz USA and "forced upon Blitz extraordinary debt," invested little capital, and caused Blitz to become "inadequately capitalized and grossly underinsured." 1st Am. Compl. ¶ 31.

2) Blitz's board was "controlled by Kinderhook directors." *Id.*

3) "Kinderhook created additional corporations in an attempt to insulate Blitz's assets from personal injury claims." *Id.* ¶ 32.

4) The Kinderhook Defendants caused Blitz to pay them management fees that were "disproportional to the amount paid to the on-site managers of Blitz USA." *Id.* ¶ 34.

5) After the gas container design was found to be defective during a trial, the Kinderhook Defendants renegotiated Blitz USA's debt and then "transferred millions of dollars to Blitz Acquisitions Holdings, Inc. . . . to avoid paying bodily injury claims arising from the defective gas cans." *Id.* ¶¶ 34-37.

6) "Kinderhook's management of Blitz was conducted with the sole purpose of draining money from Blitz USA . . . to related corporate entities." *Id.* ¶ 39.

7) "Kinderhook was intimately involved in the Blitz companies and wholly controlled their activities." *Id.* ¶ 41.

Based on these allegations, the Court is satisfied that Williamson has alleged enough to be entitled to jurisdictional discovery on her claim that Blitz USA was the mere alter ego of the Kinderhook Defendants. The Court recognizes that another district court dismissed claims against the Kinderhook

Defendants based on similar allegations. *Smith* ex rel. *VanBrunt v. Blitz USA, Inc.*, Civ. No. 11-1771 (RHK/LIB), 2012 WL 5413513, at *3 (D. Minn. Nov. 6, 2012). But in that case, the court emphasized that there was "no evidence that [the parent] is or ever has been involved in day-to-day control over production or distribution of [its subsidiary's] products." *Id.* (alterations in original) (internal quotation marks omitted). Here, Williamson alleges that the Kinderhook Defendants "wholly controlled" the activities of Blitz USA. 1st Am. Compl. ¶ 41. The Court is thus not persuaded that *Smith* supports dismissal of Williamson's claims at this stage in the litigation. Williamson has alleged enough to be entitled to jurisdictional discovery on her claim that Blitz USA was the alter ego of the Kinderhook Defendants.

C.   Merits of Williamson's Claims Against Kinderhook Defendants

The Kinderhook Defendants argue that even if the Court finds that Williamson alleged sufficient facts to be entitled to jurisdictional discovery regarding the relationship between Blitz USA and the Kinderhook Defendants, Williamson's design defect and failure to warn allegations are too conclusory to survive a motion to dismiss. The Court disagrees. This argument suffers from what this Court has previously described as the "*Twombly/Iqbal* compulsion." *See*, *e.g.*, *Barker* ex rel.

*United States v. Columbus Reg'l Healthcare Sys., Inc.*, 977 F. Supp. 2d 1341, 1346 (M.D. Ga. 2013). Empowered by language in *Twombley/Iqbal,* defendants now routinely file motions to dismiss not based on a plaintiff's failure to state sufficient facts which, if true, would state a claim that is plausible; instead, defendants argue that it is not plausible that the plaintiff will be able to prove the facts she alleges. Thus, the Court is asked "to divine what the plaintiff may plausibly be able to prove rather than accepting at the motion to dismiss stage that the plaintiff will be able to prove his allegations." *Id.* These motions "view every factual allegation as a mere legal conclusion and disparagingly label all attempts to set out the elements of a cause of action as 'bare recitals.'" *Id.* As this Court has made clear before, the Supreme Court in *Twombly* and *Iqbal* did not rewrite Rule 12(b)(6) or abandon notice pleading. *Id.* Accepting Defendant's argument in this case would require the Court to ignore *Twombly*'s admonition that "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotation marks omitted).

Here, Williamson alleges that the Kinderhook Defendants designed the gas container without a flame arrestor. 1st Am. Compl. ¶ 96. These are allegations of fact, not conclusory

statements.   Williamson also alleges that the absence of the flame arrestor made the product defective.   While one must make a deduction from the factual allegation to reach the conclusion of product defect, this is not a bare conclusory allegation. Williamson also specifically alleges the nature of the deficiencies in the warnings:   there was no warning regarding the dangers of using the gas can without a flame arrestor near a fire, and the warnings that were on the gas container were illegible.  *Id.* ¶ 105.  These are factual statements.  She also alleges that she was injured because of the design defect and the failure to warn.   While Williamson will eventually have to prove these allegations to prevail, she does not have to do so today, no matter how convinced Defendants may be of the improbability that she will ever be able to prove them. Williamson's factual allegations are certainly sufficient to survive a motion to dismiss her defective product claims against the Kinderhook Defendants.

**III. Failure to Recall/Retrofit Claims against all Defendants**

Williamson alleges that all Defendants negligently failed to "recall and/or retrofit" the gas container.  1st Am. Compl. ¶¶ 80, 123, 163.   "Georgia common law does not impose a continuing duty upon manufacturers to recall their products" unless "special circumstances" exist.  *Ford Motor Co. v. Reese*, 300 Ga. App. 82, 85, 87, 684 S.E.2d 279, 283-85 (2009).  Special

circumstances exist "if a manufacturer chooses to recall a product voluntarily" or if a "statute or governmental agency requires the manufacturer to recall the product." *Id.* at 85 n.2, 684 S.E.2d at 284 n.2.

Williamson argues that special circumstances exist here because Defendants should have reported prior adverse incidents involving the gas container model to the Consumer Product Safety Commission.  Williamson speculates that if Defendants had reported the adverse incidents, that "would have likely led to a recall."  Pl.'s Resp. to Def. Wal-Mart's Mot. to Dismiss 6, ECF No. 44.  But Plaintiff did not allege that any governmental agency actually *required* a recall or retrofit campaign.  The Court thus concludes that Plaintiff did not allege special circumstances to support a failure to recall claim.

Williamson appears to contend that even if *Reese* bars her "failure to recall" claim, it does not bar her "failure to retrofit" claim because *Reese* only addressed "recalls."  The rationale in *Reese* applies equally to recall campaigns (where a manufacturer calls back goods it sold) and retrofit campaigns (where a manufacturer calls back goods it sold *and* updates them).  In *Reese*, the Georgia Court of Appeals emphasized that under Georgia's "products liability jurisprudence, a manufacturer's duty to implement alternative safer designs is limited to the time the product is manufactured, not months or

15

years later when technology or knowledge may have changed." *Reese*, 300 Ga. App. at 85, 684 S.E.2d at 284. For these reasons, all of Williamson's failure to recall and failure to retrofit claims are dismissed.

## IV. Consumer Product Safety Act Claim against All Defendants

Williamson asserts claims against all Defendants under the Consumer Product Safety Act, 15 U.S.C. §§ 2051-2089. Williamson maintains that although Defendants were aware of the gas container's substantial hazards and of adverse incidents involving the gas container, Defendants did not report those hazards or incidents to the Consumer Product Safety Commission as required under the Act and related regulations. Defendants contend that even if these allegations are true, the Consumer Product Safety Act does not provide a private right of action for alleged reporting violations.

Congress passed the Consumer Product Safety Act "to protect the public against unreasonable risks of injury associated with consumer products." 15 U.S.C. § 2051(b)(1). The Act established the Consumer Product Safety Commission, which has authority to develop product safety standards and ban or require recalls of hazardous products. *Id.* §§ 2053, 2056, 2057, 2058, 2064(c). The Act requires manufacturers, distributors, and retailers of consumer products to inform the Commission of "information which reasonably supports the conclusion that" the

product "contains a defect which could create a substantial product hazard" or "creates an unreasonable risk of serious injury or death." 15 U.S.C. § 2064(b)(3)-(4). Manufacturers, distributors, and retailers may be subject to civil and criminal penalties for violating the Act's reporting requirements. *Id.* §§ 2068(a)(4), 2069, 2070. But the Act does not expressly provide a private right of action for a violation of the reporting requirements.

The Act does provide for a private right of action for individuals who are injured "by reason of any knowing (including willful) violation of a consumer product safety rule, or any other rule or order issued by the Commission." 15 U.S.C. § 2072(a). Williamson contends that these "rules" include the Commission's interpretation of the Act's reporting requirements, which are set forth in 16 C.F.R. §§ 1115.1 to 1115.15. *See* 16 C.F.R. § 1115.1 (stating that the purpose of part 1115 is to set forth the Commission's "interpretation of the reporting requirements imposed on manufacturers . . ., distributors, and retailers" by § 2064(b)).

Although the Eleventh Circuit has not addressed this question, every circuit court that has addressed the issue has concluded § 2072 does not create a private right of action "based on an injury resulting from noncompliance with the product hazard reporting rules issued by the Commission." *Drake*

17

*v. Honeywell, Inc.*, 797 F.2d 603, 611 (8th Cir. 1986); *accord Kloepfer v. Honda Motor Co.*, 898 F.2d 1452, 1457 (10th Cir. 1990) (holding "that there is no private cause of action under the Act for a manufacturer's failure to report to the CPSC information concerning possible defective products"); *Benitez-Allende v. Alcan Aluminio do Brasil, S.A.*, 857 F.2d 26, 35 (1st Cir. 1988) (following *Drake*); *Copley v. Heil-Quaker Corp.*, 818 F.3d 866 (table), 1987 WL 37429, at *2 (6th Cir. 1987) (per curiam) (following *Drake*); *see also In re Stand 'N Seal, Prods. Liab. Litig.*, No. 1:07 MD1804-TWT, 2009 WL 1635599, at *3-*4 (N.D. Ga. June 9, 2009) (following *Drake*); *cf. Zepik v. Tidewater Midwest, Inc.*, 856 F.2d 936, 942 (7th Cir. 1988) (agreeing with *Drake* holding and reasoning). *But see Young v. Robertshaw Controls Co.*; 560 F. Supp. 288, 294 (N.D.N.Y. 1983); (finding private right of action under § 2072 based on reporting violations); *Butcher v. Robertshaw Controls Co.*, 550 F.Supp. 692, 700 (D. Md. 1981) (same). In *Drake*, for example, the Eighth Circuit observed that "a claim of conduct inconsistent with an interpretive rule is advanced only to show that the statute itself has been violated." 797 F.2d at 607. "An action based on a violation of an interpretive rule does not state a legal claim. Being in nature hortatory, rather than mandatory, interpretive rules never can be violated." *Id.* For these reasons, the Eighth Circuit concluded that only suits for

violations of the Commission's *legislative* rules may be brought under § 2072.  *Id.* at 610-11.

The Court is persuaded by the rationale of *Drake* and the other courts that found no private right of action under the Consumer Product Safety Act for alleged reporting violations. Williamson's claims under the Consumer Product Safety Act are therefore dismissed.

**V.   Retailer Liability Claims against Wal-Mart and Home Depot**

Williamson asserts failure to warn claims against Wal-Mart and Home Depot as purported sellers of the gas container. Williamson concedes that she does not know where the gas container was purchased, although she believes that she can find the answer during discovery.  She alleges that Wal-Mart "likely" sold the container that caused her injuries.  1st Am. Compl. ¶ 26; *accord id.* ¶ 46.  But she also alleges that Kinderhook, "Wal-Mart, Home Depot and/or [Ace Hardware] distributed or sold the Blitz gas container at issue or sold the market share of such containers in the state of Georgia."  *Id.* ¶¶ 89, 153, 161. "In the alternative," Williamson alleges that "the gas container at issue in this lawsuit was purchased at Home Depot."  *Id.* ¶¶ 154, 161.  Defendants contend that Williamson's failure to allege precisely which retailer sold the gas container bars her retailer liability failure to warn claims against Home Depot and Wal-Mart.

A.   Market-Share Liability Theory

Williamson contends that it is immaterial that she does not know where the gas container was purchased because she may proceed under a market-share liability theory.  Under certain circumstances in some jurisdictions, if a plaintiff cannot prove which manufacturer produced the product that caused an injury, several manufacturers of the product can be held liable on a pro rata basis according to the market share of each manufacturer. *See generally, e.g., Sindell v. Abbott Labs.*, 607 P.2d 924 (Cal. 1980) (finding that manufacturers of DES drug could be subject to liability based on market share).

Georgia does not recognize market-share liability.  In fact, Georgia expressly rejected it: "Irrespective of privity, a manufacturer shall not be held liable for the manufacture of a product alleged to be defective based on theories of market share or enterprise, or other theories of industry-wide liability."  O.C.G.A. § 51-1-11(d).  Williamson argues that because the statute only references manufacturers, it should be read to permit market-share liability claims against product sellers.  O.C.G.A. § 51-1-11 establishes Georgia's law of strict liability *for manufacturers*, and section (d) places limits on strict liability by rejecting market-share liability.  The statute does not apply at all to sellers; under Georgia law, product sellers are not manufacturers for purposes of product

liability actions based on the doctrine of strict liability and are "not liable as such."  O.C.G.A. § 51-1-11.1(b).  In Georgia, a product seller only has a duty to warn of product dangers if the seller undertakes a duty to advise the buyer on the product's safety or if the "seller is aware of a danger either not communicated by the manufacturer's warning or substantively different from the dangers the manufacturer has included in a warning label."  *Boyce v. Gregory Poole Equip. Co.*, 269 Ga. App. 891, 896, 605 S.E.2d 384, 390 (2004).  Williamson offers no authority to support her assertion that the doctrine of market-share liability, which evolved to relax the causation rules against manufacturers of fungible goods, applies to product sellers.  For these reasons, Williamson's claims based on a market-share liability theory are dismissed.

   B.   Alternative Allegations

   Williamson argues that even if the Court rejects her market-share liability argument, her retailer liability claims should not be dismissed because she is not required, at this stage of the litigation, to pinpoint where the gas container was purchased.  The Court agrees.  Federal Rule of Civil Procedure 8(d)(2) permits alternative pleading.  Fed. R. Civ. P. 8(d)(2); *accord United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1273-74 (11th Cir. 2009).  Williamson's factual allegations must simply "raise a reasonable expectation that discovery will reveal

evidence of" her claims.  *Twombly*, 550 U.S. at 556.  Williamson is not yet in a position to know all of the particulars, but she believes that discovery will help her prove exactly where the gas container was purchased.  Should discovery reveal that the gas container was purchased at Wal-Mart, then Home Depot may be entitled to summary judgment on Williamson's retailer liability claims (and vice versa).  At the initial pleading stage, the Court is satisfied that Williamson's allegations are sufficient to state a failure to warn retailer liability claim against Wal-Mart, and in the alternative, against Home Depot.

CONCLUSION

As discussed above, Kinderhook's motion (ECF No. 36) is granted in part and denied in part; Wal-Mart's motion (ECF No. 37) is granted in part and denied in part; and Home Depot's motion (ECF No. 38) is granted in part and denied in part. The following claims are dismissed:

- Any negligence claims against Wal-Mart based on conduct other than the specific conduct Williamson alleges in her First Amended Complaint.

- Failure to recall/retrofit claims.

- Claims under the Consumer Product Safety Act.

- Claims based on a market-share liability theory.

The following claims remain pending:

- Design defect and failure to warn claims against Wal-Mart and the Kinderhook Defendants as product designers.

- Failure to warn claims against Wal-Mart and Home Depot as product sellers.

The Court previously stayed discovery pending resolution of Defendants' motions to dismiss. The stay is now lifted. The parties shall submit a joint proposed scheduling order in compliance with the Court's Rules 16/26 Order (ECF No. 25) by April 30, 2015. As discussed at the hearing, the parties should agree on a way to phase discovery so that targeted discovery of key preliminary issues, such as the Kinderhook Defendants' relationship to Blitz USA and the gas container's point of sale, are handled first.


IT IS SO ORDERED, this 8th day of April, 2015.

S/Clay D. Land
CLAY D. LAND
CHIEF U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA